UNITED STATES DISTRICT COURT
DISTRICT COURT OF MINNESOTA

---

BJORN IVERSON,

    Plaintiff,

v.

CITY OF BROOKLYN CENTER, a municipal entity;
OFFICER JOHN DOE #1, in their individual capacity;
OFFICER JOHN DOE #2, in their individual capacity;
OFFICER JOHN DOE #3, in their individual capacity,
OFFICER JOHN DOE #4, in their individual capacity,
and OFFICER JOHN DOE #5, in their individual capacity,

    Defendants.

COMPLAINT SEEKING MONEY DAMAGES

DEMAND FOR JURY TRIAL

---

## **GENERAL INTRODUCTION**

1. This is an action under 42 U.S.C. § 1983 seeking money damages as compensation for Defendants' violation of Plaintiff's constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2. Plaintiff Bjorn Iverson ("Iverson") sustained serious injuries as a result of the unreasonable use of force on April 16, 2021, in addition to other violations of his constitutional rights by Defendants 1-5, Brooklyn Center Police Officers. The conduct of the Defendants violated Iverson's clearly established federal civil rights, all while acting

1

under the color of state law. State law claims and, by consequence, limitations and defenses under state law are not applicable to this civil rights lawsuit.

3. Iverson further asserts claims against the City of Brooklyn Center (sometimes referred to herein as the "City") under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

4. Iverson is and was at all times material herein, a citizen of the Unites States and a resident of the State of Minnesota.

5. Defendants John Does 1-5, upon information and belief, were at all times material herein citizens of the United States, residents of the State of Minnesota, and duly appointed and acting as officers of the Brooklyn Center Police Department ("BCPD"). They are sued in their individual capacities.

6. Defendant City of Brooklyn Center ("the City") is a municipality duly incorporated under the laws of the State of Minnesota.

7. Iverson brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the First, Fourth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3). The aforementioned statutory and constitutional provisions confer original jurisdiction of the Court over this matter.

8. The events giving rise to this action occurred in the City of Brooklyn Center. Venue is thus proper under 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

9. On April 11, 2021, Daunte Wright, a 20-year-old biracial Black man, was fatally shot by police officer Kimberly Potter during a traffic stop and attempted arrest for an outstanding arrest warrant in Brooklyn Center, Minnesota. After a brief struggle with

officers, Wright was shot at close range. Video of the killing sparked outrage and many protests ensued as a call to change systemic racism in our nation's police departments.

10. In the following days, thousands of Minnesota residents took to public streets and spaces to protest the unjustifiable killing of Mr. Wright, as well as police killings of other people of color. The vast majority of these protestors exercised their First Amendment rights in a forthright, peaceful, and lawful manner.

11. As was typical for the Brooklyn Center Police Department's heavy-handed tactics, the protests – peaceful or not – were met with force by the BCPD, including the improper use of tear gas, 40 millimeter blunt-impact projectiles, and other supposedly "less lethal" munitions.

12. Plaintiff Iverson attended one of the protests in the aftermath of Mr. Wright's slaying in an effort to exercise his constitutional rights as a member of the press (Iverson was working as a free-lance photojournalist).

13. On the evening of April 16, 2021, Iverson, like many other journalists, went to Brooklyn Center to cover the civil uprisings. He chose to head to the scene outside of the Brooklyn City Police Department to take pictures of the protest demonstrations and law enforcement. He did not anticipate being shot instead.

14. Iverson was clearly identifiable as a member of the news media. Not only was he alerting the police officers he was a member of the press by yelling out to them, but he also wore five patches indicating he was a member of the press/media. Iverson was also positioned in an area that was some distance away from the non-media protestors.



He was also using and was carrying his professional-grade camera and lens.

15. The City responded by shooting Iverson several times with projectiles (upon belief, 40 mm projectiles and .68 cal marker rounds were shot at Iverson).

16. Iverson took part in First Amendment-protected activity. He became one of the many victims of the BCPD's pattern and practice of excessive force without fear of repercussion.

17. Iverson was struck three times, in his knee, calf, and buttocks, resulting in serious injuries. Below are images of his wounds:







18. Iverson had not committed any crime and was never charged with any crime.

19. Iverson had not displayed any aggression.

20. Iverson was unarmed.

21. Iverson posed no threat to the officers or others.

22. In order to shoot Iverson with a blunt-impact projectiles, Defendant Does 1-3 had to execute a series of volitional acts.

23. Making matters worse, no BCPD officer, sworn to "protect and serve," rendered aid to Iverson after he was shot.

24. Defendants Does 1-3 actions in shooting Iverson contravened BCPD policies (Policy 303 of the Brooklyn Center PD Policy Manual) regarding the use of force.

25. The events surrounding the shooting of Iverson became particularly suspicious when all of the BCPD officers at the scene failed to render aid to a seriously injured person.

26. The involved officers, who did not care about Iverson's constitutional rights, showed they had no concern about him as a human being who was injured – a person they had sworn "to protect with courage and serve with compassion."

27. The failure to report, or to accurately report, the use of force by BCPD officers occurred repeatedly in the days following Wright's death by the Brooklyn Center Police Department.

28. In an effort to prevent accountability, there has been no transparency with regard to Iverson's incident.

29. Additionally, upon information and belief, Defendants Does failed to follow BCPD policies with regard to report writing and supervisor notification.

30. The supervisory Defendants John Does 4 and 5 of the Brooklyn Center Police Department and policymakers at the City of Brooklyn Center had actual knowledge of the constitutionally infirm reporting and lack of adherence to BCPD policies among officers or were deliberately indifferent to the need for proper reporting by turning a blind eye.

31. Defendants have acquiesced in further frustration of Iverson's civil rights by failing to require adherence to policies regarding report writing, supervisor notification and policy-violation notifications.

32. Defendants have acquiesced in numerous additional policy violations in regard to the events surrounding the shooting of Iverson.

33. The supervisory Defendants Does 4 and 5 were causally and directly involved in the violation of Iverson's constitutional rights.

34. Further, upon belief, multiple officers in the area of Iverson's shooting were equipped with body-worn cameras (BWCs).

35. To date, Iverson has been unable to obtain any BWC footage of the incident from the BCPD or the City – either none exists or the City or BCPD is withholding it.

36. As a result of the department-wide reporting and cover-up methods, Iverson has been unable to identify the shooters – Defendants Does 1-3 – by name.

37. Prior to the shooting of Iverson, earlier that day, United States District Judge Wilhelmina M. Wright granted a temporary restraining order to stop law enforcement from attacking, harassing, and retaliating against reporters covering the Daunte Wright protests (see the *Goyette* case). Despite this order, the Defendants continued with their heavy-handed tactics, including shooting Iverson, a clearly identified member of the press. Even a federal court order did not halt Defendants' unlawful, unconstitutional practices.

38. It should also be noted that curfews imposed in Brooklyn Center and Hennepin County specifically exempted journalists.

39. The actions by Defendants would chill any person of ordinary firmness from continuing to engage in the protected activities of the press and did in fact chill Iverson's exercise of his First Amendment rights.

40. Photojournalism plays a vital role in the freedom of the press, particularly in such a tumultuous time in our nation's history with regard to police excessive use of force and unauthorized use of force.

41. Defendants acted with deliberate indifference to the constitutional rights of the members of the press as evidenced by the recurring use of excessive force against them, chilling

the press' ability to cover the matters of public concern, including law enforcement's tactics during the protests.

42. Iverson sustained physical and mental injuries because of the unconstitutional actions of the City and John Does 1-5.

43. Iverson demands a trial by jury on all issues so triable.

**COUNT I**
**42 U.S.C. § 1983 – FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS**
*Plaintiff v. Defendants John Does 1-3*

44. Iverson realleges and incorporates by reference herein each and every allegation contained in each paragraph above as though fully set forth herein.

45.  By the actions described above, Defendants, under color of state law, violated and deprived Iverson of his clearly established and well-settled civil rights to be free from excessive force under the Fourth and Fourteenth Amendments to the United States Constitution.

46. Defendants John Does 1-3 subjected Iverson to these deprivations of his rights either maliciously or by acting with reckless disregard for whether his rights would be violated.

47. As a direct and proximate result of the acts and omissions of Defendants John Does 1-3, Iverson suffered injuries, was forced to endure great pain and mental suffering, and was damaged in an amount to be determined by the jury.

48. Punitive damages in an amount to be determined by the jury are available against Defendants John Does 1-3 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20. 157.

Iverson is entitled to fully recover his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT II
### 42 U.S.C. § 1983 – FIRST AND FOURTEENTH AMENDMENT VIOLATIONS
*Plaintiff v. Defendants John Does 1-5*

49. Iverson realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

50. Iverson engaged in constitutionally protected acts. He did so in a public place and at all times obeyed the requests by City leaders.

51. Iverson was also lawfully exercising his First Amendment right to free press, speech, and assembly. He was reporting on matters of public concern, including the protests and the responses by the police department.

52. Defendants John Does 1-5, under color of state law, retaliated against Iverson for engaging in said constitutionally protected activity.

53. Iverson's First and Fourteenth Amendment rights were violated when he was deliberately targeted and shot during the course of the protest, and in the cover-up perpetrated by Defendants John Does afterward.

54. The conduct of Defendants John Does tends to chill citizens from continuing to engage in constitutionally protected activity.

55. Defendants John Does 1-5 subjected Iverson to these deprivations of his rights either maliciously or by acting with reckless disregard for whether his rights would be violated.

56. As a direct and proximate result of the acts and omissions of Defendants John Does 1-5, Iverson suffered injuries, was forced to endure great pain and mental suffering, and was damaged in an amount to be determined by the jury.

57. Punitive damages in an amount to be determined by the jury are available against Defendants John Does 1-5 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20. 166. Iverson is entitled to fully recover his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT III
### 42 U.S.C. § 1983 – CONSPIRACY TO INTERFERE WITH THE ASSERTION OF IVERSON'S RIGHTS UNDER THE CONSTITUTION AND 42 U.S.C. § 1983
*Plaintiff v. Defendants John Does 1-5*

58. Iverson realleges and incorporates by reference herein each and every allegation contained in each paragraph above as though fully set forth herein.

59. Defendants John Does 1-5 agreed either to improperly report, or not report at all, the incident regarding Iverson.

60. Defendants John Does 1-5 improperly reported, or did not report at all, the incident regarding Iverson.

61. Defendants John Does 1-5 did so in concert and with the intent to shield themselves and other Defendants and thereby prevent the assertion of Iverson's civil rights.

62. Defendants John Does 1-5, under color of state law, committed the above misconduct maliciously or with reckless disregard for whether Iverson's rights would be violated.

63. As a direct and proximate result of the actions described above, which are tantamount to obstruction of justice, Defendants John Does 1-5 have conspired to interfere with and interfered with the assertion of Iverson's civil rights, and Iverson was thereby damaged in an amount to be determined by the jury.

64. Punitive damages in an amount to be determined by the jury are available against Defendants John Does 1-5 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20.

65. Iverson is entitled to fully recover his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

**COUNT IV**
**SUPERVISORY LIABILITY**
*Plaintiff v. Defendants John Does 4 and 5*
*in their individual capacities*

66. Iverson realleges and incorporates by reference herein each and every allegation contained in each paragraph above as though fully set forth herein.

67. Defendants John Does 4 and 5 at all times material hereto were members of the Brooklyn Center Police Department with supervisory responsibilities over Defendants John Does 1-3.

68. These supervisory Defendants at the City of Brooklyn Center had actual knowledge of the constitutionally infirm force reporting in widespread use among officers.

69. As such, rank and file officers, such as Defendants John Does 1-3, freely and fragrantly violate citizens' constitutional rights using department-wide reporting methods to cover it up.

70. The supervisory Defendants had actual knowledge of the improper reporting by their officers, including Defendants John Does 1-3 regarding the Iverson incident and other similar incidents, further evidencing a policy or custom of constitutional misconduct.

71. These supervisory Defendants, under color of state law, acted with deliberate indifference to, authorized or acquiesced in the violation of Iverson's constitutional rights by Defendants John Does 1-3.

72. As a direct and proximate result of the acts and omissions of Defendants John Does 4 and 5, Iverson suffered injuries, was forced to endure great pain and mental suffering, and was damaged in an amount to be determined by a jury.

73. Punitive damages in an amount to be determined by a jury are available against Defendants John Does 4 and 5 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20. 183. Iverson is entitled to fully recover his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT V
### CIVIL RIGHTS VIOLATIONS MONELL V. DEP'T OF SOCIAL SERVICES
*Plaintiff v. Defendant City of Brooklyn Center*

74. Iverson realleges and incorporates by reference herein each and every allegation contained in each paragraph above as if fully set forth herein.

75. Before April 16, 2021, the City of Brooklyn Center, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted and/or ratified a custom, pattern or practice on the part of its officers, including the Defendants herein, of the improper use of force.

76. Through policymakers Defendants and with the department's ratification and approval, by failing to discipline all officers consistently on this point, there has been an approval of a deficient policy, custom, or practice of the improper use of force.

77. Iverson's injuries were directly and proximately caused by the aforementioned acts and omissions and by the City's customs, patterns, and/or practices. The City of Brooklyn Center is thereby liable in an amount to be determined by a jury.

78. Iverson is entitled to fully recover his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Iverson prays for judgment as follows:

1. That this Court find that the Defendants committed acts and omissions violating the First, Fourth and Fourteenth Amendments to the United States Constitution, actionable under 42 U.S.C. § 1983;

2. As to Count I, a money judgment against Defendants John Does 1-3 for compensatory damages and punitive damages in an amount to be determined by a jury, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest in an amount in excess of $100,000;

3. As to Count II, a money judgment against Defendants John Does 1-3 for compensatory damages and punitive damages in an amount to be determined by a jury, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest in an amount in excess of $100,000;

4. As to Count III, a money judgment against Defendants John Does 1-5 for compensatory damages and punitive damages in an amount in excess of $100,000, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest;

5. As to Count IV, a money judgment against Defendants John Does 4 and 5 for compensatory damages and punitive damages in an amount to be determined by a jury, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest in an amount in excess of $100,000;

6. As to Count V, a money judgment against the City of Brooklyn Center for compensatory damages in an amount an amount to be determined by a jury, together with costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and prejudgment interest in an amount in excess of $100,000;

7. For an order mandating changes in the policies and procedures of the Brooklyn Center Police Department requiring, among other things, policy and training measures in the proper use of "non-lethal weapons," the proper reporting of use of force, adherence to policies to ensure the identities of officer-shooters and witnesses are not shielded from victims, and relations and policing with those exercising their First Amendment rights; and

8. For such other and further relief as this Court may deem just and equitable.

Dated: 8/23/2021                                MAGNA LAW FIRM LLC


/s/ Oliver E. Nelson III
  Oliver Edward Nelson III, No. 0347280
  2915 South Wayzata Boulevard
  Minneapolis, MN 55405
  onelson@magnalaw.net
  (763) 234-4433

*Attorney for Plaintiff*